FOURNET, Chief Justice.
 

 Emmett Kennie Roy and his wife, Hazel Marie, availing themselves of the provisions of R.S. 9:422.1,
 
 [1]
 
 instituted this proceeding to adopt Kathy Marie Speer, their maternal granddaughter, whose custody had been
 
 *1037
 
 awarded their daughter, Betty Lois Roy Speer, in a judgment of November 22, 1960, in her suit for separation against the father, Clifton Frank Speer,
 
 [2]
 
 and who, with the child, had lived with petitioners since that time, contending the consent of the father was not necessary since he had forfeited his parental rights by failing in his responsibility of support for the child.
 

 The father contended, under exceptions of no cause and no right of action, that inasmuch as the custody of the child had never been awarded the grandparents by judgment of court, they were without right to adopt his child without his consent, which he refused to give.
 

 Counsel representing the petitioners — on whose application this writ was granted to review the judgment of the Court of Appeal for the Third Circuit affirming the judgment of the district court maintaining the exceptions and dismissing the proceeding
 
 [3]
 
 — contend the appellate court erred in strictly construing R.S. 9:422.1 and holding that grandparents, in order to avail themselves of the rights thereunder, must have legal custody by court order, claiming that once the custody of a child is awarded by the court to the (1) spouse of the petitioner, (2) the grandparent or grandparents, (3) the mother, or (4) the father, the consent of the legitimate parent who has failed to support the child as ordered by •judicial-decree is not needed. Counsel -concede-that grandparents must have custody of a child as a prerequisite to instituting the adoption proceeding, but urge this has been satisfied in the instant case because petitioners’ daughter, who had custody of the child under court judgment, has, by notarial act, transferred this custody to them.
 

 Although adoption prevailed among Biblical ancients and other civilizations of antiquity; had reached a high level of development by Justinian times, to whose institutes our civil law is traceable; and was known early in Louisiana- under Spanish law, it was never considered an inherent right here and, after Louisiana became a state, it was- specifically abolished by the civil codes of 1808 and 1825. Adoption was not permitted in .this state, therefore, until, following specific authorization in. the Constitution of 1864,
 
 [4]
 
 Act 48 of 1865 was passed, any adoption prior thereto being only on an individual basis and effected through a specific legislative act. As stated in Green v. Paul, 212 La. 337, 31 So.2d 819, “It has been firmly settled by this court that adoption is a creature of statute; that, this being so, it is only what the law makes it and that, to establish the relation, the statutory requirements must be strictly carried out, otherwise, the
 
 *1039
 
 adoption is a nullity.” See, also, Succession of Gambino, 225 La. 674, 73 So.2d 800; Madere v. Long, 231 La. 498, 91 So.2d 771; In re Ackenhausen, 244 La. 730, 154 So.2d 380, and the authorities therein cited.
 

 Under Act 48 of 1865, the first statute governing adoptions in Louisiana, judicial authorization was required for a valid adoption, and although Act 31 of 1872 dispensed with this, providing adoption could be effected by the simple procedure of the execution of a notarial act signed by the adoptive and natural parents (survivor, or legal tutor), subsequent legislation eliminated the notarial requirement, and, since the enactment of Act 42 of 1932, as amended, particularly by Act 428 of 1938, the adoption of children in this state has been under court supervision and authorization. See, Green v. Paul, supra; In re Hughes, La.App., 176 So.2d 158; Pugh, Juvenile Laws of Louisiana, 189-267; 1 Louisiana Law Review 196; 22 Tulane Law Review 513; and 36 Tulane Law Review 201 for a history of adoption legislation, procedure, and jurisprudence in this state.
 

 Furthermore, “the jurisprudence is settled that consent of the natural parents is necessary * * * as it has either been specifically required or contemplated by our statutes,” and “while there are a few pronouncements to the contrary, the preponderance of the jurisprudence is that the continuing consent of the natural parent is vital to the validity of the adoption decree.” Green v. Paul, supra. See, also, In re Byrd, 226 La. 194, 75 So.2d 331; Madere v. Long, 231 La. 498, 91 So.2d 771; In re Harville, 233 La. 1, 96 So.2d 20, and the authorities therein cited.
 
 [5]
 

 Ties between parent and child, being the closest and strongest within the human family, courts sever them with extreme reluctance. The natural rights flowing from this relationship form the basis for the legislative requirement in former statutes and ■ jurisprudence that both parents must consent before a child can. be adopted under the proceedings authorized by our law-making body.
 
 [6]
 
 It was not until the passage of R.S. 9:422.1 by Act 501 of 1958 that the consent of both parents was dispensed with under the limited circumstances there set out; and it was not until Act 268 of 1960, amending R.S. 9:422.1, that this rule was extended to include grandparents. These- statutes, being in derogation of the natural right of the parents to the child, and the right of the child to its parents, have consistently been strictly construed
 
 *1041
 
 in the jurisprudence in favor of the parents. Green v. Paul, supra; In re Ackenhausen, supra; In re LaFitte, 247 La. 856, 174 So.2d 804; and In re Hughes, supra.
 

 A study and analysis of R.S. 9:422.1 as now amended readily discloses it provides in clear and unambiguous language that in an adoption proceeding where the parent charged with the responsibility of supporting a child is a nonresident (as in the instant case), and the “petitioner is the grandparent or grandparents of the child” (as here), then the consent of a nonresident parent is not necessary if “the grandparent or grandparents * * *
 
 have been granted the custody of the child by a court of competent jurisdiction”
 
 (Condition No. 1), and the nonresident parent has “failed to support the child
 
 for a period of one year after judgment awarding the custody to the
 
 * * *
 
 grandparent or grandparents"'
 

 [7]
 

 (Condition No. 3). (The emphasis has been supplied.)
 

 It necessarily follows, therefore, that the contention of counsel that the consent of a nonresident parent was not necessary because the custody of the child had been awarded to the grandparents by its mother (having custody under the decree in the separation suit) in a notarial act, is untenable, for under the jurisprudence, in cases affecting the custody of children, they become, in effect, wards of the court,
 
 [8]
 
 because the state has a superior right that goes beyond the parental right where the best interest and welfare of the child is involved; in which instance the right of the parent, that is not an absolute one, must yield.
 
 [9]
 
 Consequently, a decree ' awarding custody of a child is subject to modification by the court whenever it is established, after a hearing with all parties at interest participating, there has been a change of conditions that makes it necessary for the best interest and welfare of the child that the original custody decree be changed accordingly.
 
 [10]
 
 Furthermore, where the court has awarded custody to one parent, whom it considers the proper person for that trust, this parent cannot thereafter abdicate the
 
 *1043
 
 trust by purportedly vesting the custody in another by written agreement, even if the one to whom the custody is sought to be thus transferred is the other parent. See, Farr v. Emuy, 121 La. 91, 46 So. 112, 15 L.R.A.,N.S., 744.
 

 This jurisprudence is the real basis for the prior-custody requirement as a prerequisite to the adoption of a child by those granted that privilege in R.S. 9:422.1 without the consent of the parents. As pointed out in In re Ackenhausen, 244 La. 730, 154 So.2d 380, the prior-custody requirements
 
 prevents an-adoption from upsetting "a custody decree wherein it had been adjudged that the best interest of a child required it to be zvith one parent (or a grandparent) rather than the other parent ’’
 
 (The emphasis has been supplied.)
 

 For the court to deviate from this estab- • lished jurisprudence, and permit one to whom custody of a minor has been awarded by judicial decree to vest that custody in another by a mere notarial act, without a judicial hearing to determine whether this would be to the best interest of the child, there would have to be a clear, specific, and unequivocal legislative mandate to that effect.
 

 The judgment of the Court of Appeal for the Third Circuit is reinstated and made the final judgment of this court.
 

 HAMITER, J., concurs in the result.
 

 [1]
 

 . R.S. 9:422.1, as amended through 1962, provides: “If the spouse of the petitioner is the legitimate parent of the child or if the petitioner, is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary'if the first and second or the first and third conditions exist: .(1) The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and (2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or (3) The other legitimate parent is a nonresident of this state and lias failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grantparents.”
 

 [2]
 

 .A subsequent divorce secured by the bus-band makes no mention of custody of the child.
 

 [3]
 

 . See, Roy v. Speer, La.App., 184 So.2d 796: Writ granted, 249 La. 887, 186 So.2d 631.
 

 [4]
 

 . Article 117.
 

 [5]
 

 . This court lias not so far been called upon to determine the effect of Act 268 of 1960, amending R.S. 9:431, on this jurisprudence with respect to continuing consent of the parents up until the final judgment in adoption matters.
 

 [6]
 

 . The statutes pertinent here have no reference to abandoned minors or to the adoption of adults.
 

 [7]
 

 . This is the generally recognized interpretation of R.S. 9:422.1 as amended by the 1960 act. See, 21 Louisiana Law Review 56, and 36 Tulano Law Review at page 218.
 

 [8]
 

 . Downey v. Downey, 183 La. 424, 164 So. 160.
 

 [9]
 

 . Davis v. Willis, 169 La. 13, 124 So. 129; State ex rel. Munson v. Jackson, 210 La. 1, 26 So.2d 152; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740; State ex rel. Graham v. Garrard, 213 La. 318, 34 So.2d 792; State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888; In re Harville, 233 La. 1, 96 So.2d 20; State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422; State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228; and Dungan v. Dungan, 239 La. 733, 119 So.2d 843.
 

 [10]
 

 . Pullen v. Pullen, 161 La. 721, 109 So. 400; Jacquet v. Disimone, 175. La. 617, 143 So. 710; Downey v. Downey, 183 La. 424, 164 So. 160; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740; State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888, and the authorities therein cit
 
 ed.