WATSON, Judge.
This is an appeal by Dorothy Woods from a judgment denying her petition for Writ of Habeas Corpus and granting Loretta Bruce Collins a period of six months within which to petition for a final decree of adoption. Dorothy Woods, now wife of Jimmy LeMaire, is the natural mother of the child, Crystal Ann Vincent, whose adoption and custody is in dispute. The child was born June IS, 1962, and is now 10 years old.
A chronology of pertinent events is necessary to an understanding of the issues presented by the appeal. The mother, plaintiff here, left her husband, Julius Vincent, and five children on an indeterminate date prior to 1966. She left, apparently, because she and Vincent could not get along and she believed Vincent could better provide for the children. In August, 1966, one of the five children, Crystal Ann Vincent, also known as “Cookie”, came into the physical custody of Loretta Bruce Collins and her former husband, John Pierre *467 Collins. An adoption proceeding was instituted in November 1966, and an interlocutory decree of adoption was granted on March 17, 1967. Both the plaintiff and Julius Vincent gave their consent to the interlocutory decree. Vincent obtained a Mississippi divorce from Dorothy Woods in 1968, the decree purporting to grant him custody of all five children born of the marriage. Loretta Bruce Collins and her husband began to have matrimonial difficulties — separated, reconciled, separated again and were finally divorced on October 24, 1969. Some months later, on April 16, 1970, Julius Vincent, the natural father of Crystal, was killed in an offshore accident. Recovery was made in other litigation on behalf of Crystal, on behalf of three brothers who have been in the custody of their natural mother since June 1, 1970, and on behalf of a retarded brother who is institutionalized in Shreveport.
Loretta Bruce Collins has never instituted proceedings to obtain a final decree of adoption, although Crystal has been continuously in her physical custody six years and the interlocutory adoption decree was obtained more than five years ago.
A petition for a Writ of Habeas Corpus was filed on June 20, 1972, by Dorothy Woods contending that no application for a final decree of adoption has been made within the two year statutory time period provided by LSA-R.'S. 9:431, and that the interlocutory decree is now null and void. She asked for Crystal’s return to her.
The defendant answered, contending that (1) a petition for final adoption was never filed because it was hoped that defendant and her husband would reconcile their matrimonial discord and petition jointly; and that (2) it later developed that the child had a cause of action for the death of her natural father and it was believed on advice of legal counsel that if defendant went forward and completed the adoption procedure with the wrongful death claim pending, the claim of the child would be prejudiced. For these two considerations, defendant contended that good cause existed why the adoption proceeding was not completed and that an extension should be granted under the pertinent statute.
Witnesses were presented in the trial court on behalf of the respective parties and the facts were established without serious dispute. This court is convinced from the record that both parties are sincere in their interest in the child and that both would do their best to give her a good home.
After trial, the district court concluded that good cause had been shown for failure to apply for a final adoption, that in the best interest of the child she should remain with the defendant and that a six months’ extension should be granted to apply for the final adoption decree.
To be construed on this appeal is the second paragraph of LSA-R.S. 9:431, which reads as follows:
“At any time before the entry of the final decree of adoption the court for good cause, other than mere withdrawal of consent by legitimate parent or parents, by the mother or by the father who has acknowledged the child by notarial act as provided by Article 203 of the Civil Code, may revoke its interlocutory decree either on its own motion or on the motion of the department or on motion of the petitioner or any person interested in the child. However all parties upon whom the petition was originally served shall be notified at least ten days prior to the signing of the order of revocation and shall be given an opportunity to be heard upon their written request.
“If no petition for a final decree is filed within two years after the granting of an interlocutory decree the latter shall becqme null and void unless good cause is shown why an extension should be granted. As Amended Acts 1960, No. 268, § 3.”
*468 The plaintiff, through her able and resourceful counsel, argues that upon the expiration of two years from the date of the interlocutory decree, the adopting parent is foreclosed from applying for a final decree. Under the plain and unambiguous language of the statute, however, an extension may be granted if good cause be shown. The question for resolution of the appeal then becomes: was the trial court correct in holding that “good cause” was shown for an extension of time in which to apply for the final decree ?
In passing on the trial court’s decision concerning good cause, we note that adoption is not a creature of the civil law and that there are no articles regulating adoption in our Civil Code. The history of adoption in Louisiana has been summarized by Chief Justice Fournet in Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966) as follows :
“Although adoption prevailed among Biblical ancients and other civilizations of antiquity; had reached a high level of development by Justinian times, to whose institutes our civil law is traceable; and was known early in Louisiana under Spanish law, it was never considered an inherent right here and, after Louisiana became a state, it was specifically abolished by the civil codes of 1808 and 1825. Adoption was not permitted in this state, therefore, until, following specific authorization in the Constitution of 1864, Act 48 of 1865 was passed, any adoption prior thereto being only on an individual basis and effected through a specific legislative act.
“Under Act 48 of 1865, the first statute governing adoptions in Louisiana, judicial authorization was required for a valid adoption, and although Act 31 of 1872 dispensed with this, providing adoption could be effected by the simple procedure of the execution of a notarial act signed by the adoptive and natural parents (survivor, or legal tutor), subsequent legislation eliminated the notarial requirement, and, since the enactment of Act 42 of 1932, as amended, particularly by Act 428 of 1938, the adoption of children in this state has been under court supervision and authorization.” 192 So. 554 at 556.
There is no dispute that the requirements of the law must be met, for as stated by Justice McCaleb (later Chief Justice) in Green v. Paul, 212 La. 337, 31 So. 2d 819 (1947):
“It has been firmly settled by this court that adoption is a creature of statute; that, this being so, it is only what the law makes it and that, to establish the relation, the statutory requirements must be strictly carried out, otherwise, the adoption is an absolute nullity.” 31 So. 2d 819 at 821.
This brings us to the question of what constitutes good cause as used in the statute. No cases have been found in our Louisiana jurisprudence which consider what constitutes good cause for extending the interlocutory decree. Likewise, no cases emanating from our sister states have been found to bear on the question.
The Louisiana adoption statutes, LSA-R.S. 9:421 et seq., vest discretion in the trial judge in several particulars. The trial judge exercises discretion as to whether an interlocutory decree should be granted. LSA-9 :429; In re Bourque, 245 So.2d 525. The same is true concerning the final decree. LSA-R.S. 9:432. And in our view, the second paragraph of LSA-R.S. 9:431 places another discretionary responsibility on the trial judge; in clear terms he is given the duty of deciding whether good cause has been shown for extending the period in which the adopting parents may apply for a final decree.
In considering what constitutes “good cause” for revoking an interlocutory decree of adoption our brothers of the *469 Third 'Circuit have laid down the requirement of a showing that (1) the adoptive parents are unfit or (2) that it would be to the best interest of the child that the decree be revoked, (In re Bourque, supra) and our brothers of the Fourth Circuit have agreed (In re Adoption of Giam-brone, 262 So.2d 566). There is no evidence of unfitness on the part of the adopting parent in the present case; in fact, there is no contention of unfitness. As to best interest, the trial court found, and the evidence supports him, that it lies in completing the adoption. The defendant advances the contentions that her reasons for delay in filing for a final decree of adoption were, first, to try to patch up her maritial difficulties with her husband, thereby affording the adoptive child a complete family environment, and, second, to avoid any prejudice to the child’s claim for the death of her natural father. Without question both of these objectives relate to the best interest and welfare of the child. The trial court apparently found, and this court will adopt the proposition, that good cause for the extension of time in which to file for a final decree of adoption is a circumstance which has a substantial bearing on the best interest and welfare of the child. The trial court found that the circumstances presented by the defendant constituted good cause and this court will not disturb ‘his finding.
“This determination follows the well established legal principle that the trial court’s finding of the question of what is for the best interest for the child is to be given great weight and is not to be overturned unless the appellate court finds the trial court has manifestly abused its discretion.” Schilling v. White, 180 So. 2d 225, at 228. (and the cases cited therein).
We are not overlooking the fact that:
“Ties between parent and child, being the closest and strongest within the human family, courts sever them with extreme reluctance.” Roy v. Speer, supra, 192 So.2d at 556.
However, a child who was born in June, 1962, and who has lived with the adopting parent since August, 1966, or more than six of her ten years has through no fault or even choice of her own established a new set of ties which in the opinion of this court cannot be ignored. And when an adoption has been delayed for reasons which obviously relate to the child’s best interest, we conclude that the trial judge was not in error when he, as clearly authorized by statute, extended the time for completion of the adoption.
For the reasons assigned, the judgment is affirmed at appellant’s cost.
Affirmed.